Julian *et al. v.* The State.

No. 16,697.

JULIAN ET AL. *v.* THE STATE.

GOVERNOR.—*Power to Employ Counsel.—Resisting Legislation.*—Neither the Governor nor any other officer of the State has authority to employ an attorney to render services to prevent the enactment of laws or of any specified law.

COURT OF CLAIMS.—*Legislative Adjustment.*—Where the Legislature assumes jurisdiction of a claim against the State and adjusts it, the court of claims has no jurisdiction whatever over the matter nor to make an allowance.

OFFICERS.—*Statutory Powers.—Persons Dealing With.—Notice.*—All persons dealing with officers exercising statutory powers, and whose authority is limited by statute, are charged with notice of the scope of such officers' authority.

From the Marion Superior Court.

*Davis & Martz, J. B. Julian* and *J. F. Julian,* for appellant.

*W. A. Ketcham,* Attorney-General, *S. H. Spooner* and *M. Moores,* for State.

MONKS, J.—This action was brought by appellants, in the court below, under the act approved March 9, 1889, section 1419, R. S. 1894, which authorizes any person or persons having, or claiming to have, a money demand against the State, arising at law or equity, express or implied, to bring suit against the State in the superior court of Marion county, Indiana, etc.

It is averred in the first paragraph of the complaint that in 1879 the State was the owner of 8,000 acres of land known as the Beaver lake lands, in Newton county, and which had been taken possession of by persons without right, who assumed to own the same; that Attorney-General Woolen appointed appellants his assistants, to bring and prosecute all necessary suits in the State's favor to recover said lands; that the Governor, James

D. Williams, also employed appellants as attorneys for the State to take charge of and bring and prosecute all necessary suits to recover said real estate, and to defend the State and her property in all suits that should be brought in the interest of the trespassers on said land, and that the compensation was to be reasonable and fair; that appellant Jacob B. Julian who had been employed by the Governor as aforesaid, was made said Woolen's assistant, and each successor of said Woolen adopted him as his assistant, and approved of the appointment of said John F. Julian as his assistant; that the several Governors of the State, and all the State officers during the pendency of the litigation and the legislative contests so vigorously resisted, down to the close of the business, as they severally came into office, ratified and approved of the appointment and adopted and recognized the same as binding on them severally; that under said employment they brought and prosecuted thirty suits, one of which was appealed to the Supreme Court of the State, where the same was decided in favor of the State; that their services in the above were worth at least $3,000, and for money expended and labor performed in trips to Newton county, etc., the sum of $500, and for interest $500, making in all $4,000; that at the session of the Legislature of 1881 the trespassers on said lands, seeing that in the courts they were defeated, caused bills to be presented in each house of the Legislature directing the dismissal of said suits, and quieting the title of said lands in said trespassers; that appellants were thereupon employed and instructed by the Governor and State officers, including Attorney-General Baldwin, to enter into the State's service, and by all fair and legal means resist said threatened inimical legislation and the attempt of said trespassers therein to cheat the State out of said lands; that for resisting these several bills, and others of

Julian *et al. v.* The State.

the same nature, they were to be paid by the State; that appellants spent their days and many nights in personal effort with the committees, including the individual members of the Legislature, during the sessions of 1881, 1883, 1885, 1887 and 1889, and before each session and for many months thereafter; that at the session of 1889 a bill was passed giving away said lands for an insignificant sum; that appellants devoted themselves through said session, including months in advance, as they had done during and prior to other sessions, in resisting said legislation, devoting all their time and leaving nothing undone to enlighten the minds of the members as to the right of the State, her perfect title to the lands and the utter want of title or claim thereto on the part of the trespassers; that both before and during said session they prepared and caused to be printed and circulated circulars and statements, fully showing the State's claim to said lands, and the same were handed to each member; that every day was spent in appeals to members to defeat the outrage; that they appeared before the committee and argued the cause of the State but without avail, and the outrage was consummated, the bill was passed and appellants were, by section seven thereof, awarded about $400 for their services and expenses in bringing and prosecuting said actions; that said services, exclusive of the prosecution of said suits were of the fair value of $5,000.

The second paragraph seeks to recover for services rendered resisting legislation during the sessions of 1881, 1883, 1885, 1887 and 1889.

The third paragraph is the same as the first, except it is averred that they were employed by the Governor alone.

A demurrer was sustained to each paragraph of the

complaint, and appellants refusing to plead further, judgment was rendered in favor of the State.

Appellants earnestly insist that the court below erred in sustaining the demurrer to the complaint.

This court held, in *Julian* v. *State*, 122 Ind. 68, that the attorney-general, even with the approbation of the Governor, secretary, auditor and treasurer of State, had no authority to contract with an attorney for his services in prosecuting actions in behalf of the State to recover real estate.

Appellants, however, claim that section 5583, R. S. 1881 (section 7606, R. S. 1894), conferred the authority on the Governor to employ them to render the services alleged in the complaint. That section provides: "That the Governor may employ counsel to protect the interests of the State in any matter of litigation where the same is involved, and the expense incurred under this section may be allowed by him and paid out of any money appropriated for that purpose." This section was enacted in 1852, when there was no office of attorney-general. In 1855 that office was created, and he was required to prosecute and defend all suits that may be instituted by or against the State, the prosecution or defense of which is not already provided for by law when required by the Governor or a majority of the State officers. R. S. 1881, sections 5659, 5668 (R. S. 1894, sections 7686, 7692).

It is clear that neither the Governor nor any other officer had any authority to employ appellants to render services in laboring with and enlightening the members and committees of the Legislature to prevent the enactment of certain laws, as alleged in the complaint. No such power is given such officers or any one of them. Appellants are charged with notice of such want of authority.

*Honey Creek School Tp.* v. *Barnes,* 119 Ind. 213; *Julian* v. *State, supra,* and authorities there cited.

Such authority was not given by section 5583, *supra,* as that has reference to matters of litigation, while the alleged services in laboring with and enlightening the members and committees had reference to legislation.

The complaint, so far as the services rendered in laboring with the committees and members of the Legislature, as alleged, are concerned, states no cause of action against the State.

It is not necessary in this case to determine whether or not the Governor had authority to employ appellants to bring and prosecute said suits or assist therein under section 5583, *supra* (section 7606, *supra*), considered in connection with sections 5659, 5668, *supra* (sections 7686, 7692, *supra*), concerning the duties of the attorney-general.

If it is admitted that the Governor had the power to employ appellants to bring and prosecute the suits to recover the Beaver Lake lands, that would not entitle them to maintain this action. Actions like this can only be brought and a recovery had against the State by virtue of the provisions of the Acts of 1889, p. 365, sections 1419 to 1425, inclusive, R.. S. 1894. Without this act the Marion Superior Court would have no jurisdiction of a case to recover for any money demand against the State.

By an act passed by the Legislature and approved March 9, 1889, the Beaver Lake lands mentioned in the complaint were directed to be sold, and appellants were allowed by section 7 of that act 12 per cent. of the value of said lands for their services, Acts 1889, p. 355 to 358. This is the act which appellants allege in the complaint they labored to defeat and characterize as an outrage. The Legislature, by this act, took upon it-

self the adjustment and settlement of this claim and assumed jurisdiction of the whole matter by allowing what it deemed just for the services rendered, and for this reason the courts have no jurisdiction whatever over the same. *Julian* v. *State, supra*; *DeGroot* v. *United States*, 5 Wall. ( U. S. ) 419.

There was no error in sustaining the demurrer to the complaint.

Judgment affirmed.

